UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER J. GIUDITTA  )  <br>     Plaintiff,  ) <br> ) <br> ) <br> v.  ) <br> ) <br> BMW FINANCIAL SERVICES NA, LLC, and  ) <br> FIRSTSOURCE ADVANTAGE, LLC  ) <br>     Defendants  ) <br> ) | CIVIL ACTION <br><br> COMPLAINT <br><br><br> JURY TRIAL CLAIMED <br><br><br><br><br> OCTOBER 24, 2011 |

**COMPLAINT**

**I. INTRODUCTION**

1. This is a suit brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and includes pendent claims brought under State law for violation of the Connecticut Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

## II. PARTIES

2. Plaintiff, Christopher J. Giuditta, is a consumer residing in West Hartford, Connecticut.

3. Defendant, BMW Financial Services NA, LLC ("BMW"), is a Delaware Limited Liability Company that provides financing for consumer automobile loans and is a creditor as defined by Conn. Gen. Stat. § 36a-645(2).

4. Defendant, Firstsource Advantage, LLC ("Firstsource"), is a New York Limited Liability Company and is licensed by the Connecticut Department of Banking as a Consumer Collection Agency and is a debt collector as defined by FDCPA 15 U.S.C. §1692a(3).

## III. JURISDICTION

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1367, and 1337.

6. This court has jurisdiction over BMW because it conducts business within Connecticut.

7. This Court has jurisdiction over Firstsource because it engages in debt collection within Connecticut.

8. Venue in this Court is proper, because the Plaintiff is a resident and the acts complained of occurred in this state.

## IV. **FACTUAL ALLEGATIONS**

9. Plaintiff owed BMW a consumer debt related to a Lease Agreement contract held by BMW (the "Debt").

10. On or around October 2010, BMW contacted Plaintiff's cell phone in an attempt to collect the Debt.

11. Plaintiff told "John," the BMW representative with whom he spoke, that he was planning to file bankruptcy and provided BMW with his bankruptcy attorney's name and contact information.

12. Despite his request, BMW continued to contact Plaintiff.

13. On or around October 2010, Firstsource contacted Plaintiff's cell phone and attempt to collect the Debt.

14. Plaintiff informed Firstsource that he intended to file bankruptcy, and provided Firstsource with the name and contact information for his bankruptcy attorney.

15. Despite his request, Firstsource continued to contact Plaintiff.

16. Sometime in early 2011, on the advice of his attorney, Plaintiff decided not to file bankruptcy until later in the year.

17. On or around April 2011, BMW and Firstsource resumed contacting Plaintiff's cell phone.

18. Around this time, in or around April 2011, Firstsource and BMW also began contacting Plaintiff at his place of employment.

19. During some of the calls placed to Plaintiff's work, Firstsource and BMW left messages on the general office voicemail, causing the messages to be heard by one or more of Plaintiff's co workers. These messages referenced the Debt.

20. As a result of these messages, Plaintiff suffered extreme embarrassment and shame, as his coworkers were not previously aware of his financial problems and because he did not want his coworkers to know about his financial problems.

21. During several of the calls Plaintiff received at work, Plaintiff told BMW and Firstsource that he could not receive calls at work and requested that BMW and Firstsource stop contacting him at his place of employment.

22. Despite his requests, BMW and Firstsource continued to contact Plaintiff at his place of employment.

## V. COUNT ONE
### Fair Debt Collection Practices Act- Firstsource Only

1-22. Plaintiff incorporates Paragraphs 1-22.

23. Firstsource violated the FDCPA in the following respects:

   a. Firstsource violated 15 USC § 1692d, by engaging in conduct the natural consequence of which was to harass, abuse or oppress Plaintiff; specifically, by leaving messages on the general office voicemail where such messages could be heard by his coworkers and by continuing to contact Plaintiff's cell phone and work numbers despite its receipt of his requests not to do so.

   b. Firstsource violated 15 U.S.C. § 1692c(a)(1) and (3) by contacting Plaintiff's place of employment despite its knowledge or reason to know that such communications were inconvenient and/or embarrassing to Plaintiff and/or that Plaintiff was prohibited from receiving such communications at work.

   c. Firstsource violated 15 U.S.C § 1692c(a)(2) by continuing to contact Plaintiff despite its knowledge that Plaintiff had retained an attorney in connection with the debt.

   d. Firstsource violated 15 U.S.C. § 1692f by using unfair or unconscionable means in an attempt to collect the debt, as described above.

    e. Firstsource violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the debt, as described above, including, but not limited to, its representatives' representations that they were calling from BMW.

24. For Firstsource's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

## VI. COUNT TWO
### Creditors' Collection Practices Act- BMW only

1-24. Plaintiff incorporates paragraphs 1-22.

25. BMW violated the Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 *et seq.* in the following respects:

    a. BMW violated Conn. Agencies Reg. § 36a-647-5 by engaging in conduct the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of the Debt.

    b. BMW violated Conn. Agencies Reg. § 36a-647-4(a)(2) by contacting Plaintiff in an attempt to collect a debt despite having been provided with contact information for Plaintiff's attorney;

    c.  BMW violated Conn Agencies Reg. § 36a-647-4(a)(3) by contacting Plaintiff at his place of employment despite knowledge or reason to know that Plaintiff could not receive calls at work.

    d.  BMW violated Conn. Agencies Reg § 36a-647(a)(1) by contacting Plaintiff at work despite knowledge or reason to know that it was embarrassing or inconvenient for Plaintiff to receive such calls at work.

26. For the unlawful acts of BMW, as described above, Plaintiff seeks his damages, statutory damages, and attorney's fees and costs pursuant to the CCPA.

## VII.  COUNT THREE
### Telephone Consumer Protection Act- BMW Only

1-27. Plaintiff incorporates Paragraphs 1-13.

27. On or around October 2010, BMW called Plaintiff's cell phone with the use of an automatic dialer and/or pre-recorded voice in an attempt to collect the debt.

28. Plaintiff told "John," the BMW representative with whom Plaintiff spoke, that the number was a cell phone number and requested that BMW stop calling it.

7

29. Despite his request, BMW continued to contact Plaintiff's cell phone through the use of an automatic dialer and/or pre-recorded voice in an attempt to collect the debt.

30. On or around July 7, 2011, Plaintiff sent a certified letter, return receipt requested, to BMW requesting that it cease contacting him on his cell phone.  In that letter, Plaintiff stated that BMW could contact him at his home number.

31. Despite his request, Plaintiff continued to receive calls from BMW.

32. BMW violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), each time it called Plaintiff's cell phone number using an automatic dialing system and/or pre-recorded voice.

33. Pursuant to 47 U.S.C. § 227(b)(3), BMW is liable to Plaintiff in an amount of no less than $500 for each call BMW made to Plaintiff's cell phone number, and BMW is liable to Plaintiff in an amount of up to $1,500 for each call BMW made to Plaintiff's cell phone number that is determined to be of a willful nature.

## VIII. COUNT FOUR
**Telephone Consumer Protection Act- Firstsource Only**

34. Plaintiff Incorporates paragraphs 1-13.

35. On or around April 2011, Firstsource called Plaintiff's cell phone with the use of an automatic dialer and/or pre-recorded voice in an attempt to collect the debt.

36. Plaintiff told "Donna," the Firstsource representative with whom Plaintiff spoke, that the number was a cell phone number and requested that Firstsource stop calling it.

37. Despite his request, Firstsource continued to contact Plaintiff's cell phone through the use of an automatic dialer and/or pre-recorded voice in an attempt to collect the debt.

38. On or around July 7, 2011, Plaintiff sent a certified letter, return receipt requested, to BMW requesting that it cease contacting him on his cell phone. In that letter, Plaintiff stated that BMW could contact him at his home number.

39. On August 29, 2011 Plaintiff received three calls to his cell phone from Firstsource that were placed through the use of an automatic dialer.

40. Plaintiff answered the third call and the representative with whom Plaintiff was connected, Daniel Donogher, identified himself as a representative of BMW and attempted to collect the debt.

41. Donogher told Plaintiff that Firstsource had received his July 7, 2011 letter to BMW and confirmed that the file notes indicated that Plaintiff should be contacted at his home number and not on his cell phone. During this call Plaintiff confirmed that Firstsource should not contact him on his cell phone.

42. On or around September 26, 2011, Firstsource contacted Plaintiff cell phone number through the use of an automatic dialer and/or prerecorded voice.

43. Firstsource violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), each time it called Plaintiff's cell phone number using an automatic dialing system and/or pre-recorded voice.

44. Pursuant to 47 U.S.C. § 227(b)(3), Firstsource is liable to Plaintiff in an amount of no less than $500 for each call Firstsource made to Plaintiff's cell phone number, and Firstsource is liable to Plaintiff in an amount of up to $1,500 for each call Firstsource made to Plaintiff's cell phone number that is determined to be of a willful nature.

### IX. COUNT FIVE
**Connecticut Unfair Trade Practices Act- BMW**

45. Plaintiff incorporates Paragraphs 1-22 and 25-33.

46. BMW violated the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §§ 42-110a *et seq.* by engaging in unlawful debt collection activities described above.

47. BMW's acts as described above, were unfair, immoral, unethical, oppressive and unscrupulous as such to cause substantial injury to consumers, especially Plaintiff.

48. Plaintiff suffered an ascertainable loss because of BMW's illegal collection activities, including but not limited to the mailing fees Plaintiff incurred when he sent his cease and desist letter to BMW in an attempt to stop defendants' illegal debt collection activities.

49. BMW violated the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §§ 42-110a *et seq.* and are liable to Plaintiff for his monetary damages, punitive damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g.

## X. COUNT SIX
**Connecticut Unfair Trade Practices Act- BMW**

50. Plaintiff incorporates paragraphs 1-24 and 34-44.

51. Firstsource violated the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §§ 42-110a *et seq.* by engaging in unlawful debt collection activities described above.

52. Firstsource's acts as described above, were unfair, immoral, unethical, oppressive and unscrupulous as such to cause substantial injury to consumers, especially Plaintiff.

53. Plaintiff suffered an ascertainable loss because of Firstsource's illegal collection activities, including but not limited to the mailing fees Plaintiff incurred when he sent his cease and desist letter in an attempt to stop defendants' illegal debt collection activities.

54. Firstsource violated the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §§ 42-110a *et seq.* and is liable to Plaintiff for his monetary damages, punitive damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g.

WHEREFORE, the Plaintiff claims:

1. Recovery of actual damages (including emotional distress damages) pursuant to 15 U.S.C. § 1692k; statutory damages pursuant to 15 U.S.C. § 1692k; attorney's fees and costs pursuant to 15 U.S.C. § 1692k;
2. Statutory damages of up to $1,000 pursuant to Conn. Gen. Stat. § 36a-648 (Public Act No. 07-176);
3. Attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648 (Public Act No. 07-176);
4. Monetary damages pursuant to 47 U.S.C. § 227(b)(3) plus damages for any additional calls that may occur;

5. Actual damages, Attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. § 42-110g; and,

6. Such other relief as may apply at law or at equity.

**PLAINTIFF, CHRISTOPHER J. GIUDITTA**

By: /s/ Daniel S. Blinn
Daniel S. Blinn
Consumer Law Group, LLC
35 Cold Spring Rd, Suite 512
Rocky Hill, CT  06067-9997
Tel (860) 571-0408
Fax (860) 571-7457
Juris No. 414047